**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ReBath LLC, | No. CV-16-01700-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| New England Bath Incorporated, et al., | |
| Defendants. | |

This case involves a dispute between a franchisor of bathroom remodeling products and services and its former franchisee. Plaintiff ReBath LLC moves to preliminarily enjoin Defendants New England Bath Inc. and Jennifer Bylo from using confidential information obtained during operation of the franchise, displaying trademarks and logos, and operating a competing business in violation of a noncompetition clause. (Doc. 4.) The Court held oral argument on the motion on July, 6, 2016. For the reasons stated below, the motion is granted.

## **BACKGROUND**

For purposes of this Order, the following facts are undisputed unless otherwise noted. ReBath is a bathroom remodeling franchisor. (Doc. 5 at 2.) It provides operational and technical expertise to franchisees for use in marketing, selling, and installing ReBath products within an exclusive territory. (*Id.*) ReBath also provides confidential and trade secret information to franchisees, including a comprehensive

operating manual to assist in opening and operating the franchise. (*Id.*)

During 2008 and 2009, Defendants entered into three separate franchise agreements with ReBath, each with a term of seven years. (*Id.*) The agreements prohibited "Defendants from transacting business in any area outside of their exclusive territory" and required them to forward outside leads to the appropriate franchise. (*Id.* at 4.) If Defendants violated this provision, they would be required to pay liquidated damages in the amount of gross profits received, and their franchise would be subject to immediate termination. (*Id.*) Renewal of the agreements was conditioned upon Defendants' compliance with all provisions of the agreements and execution of ReBath's renewal agreement. (*Id.*)

In addition, the agreements provide several post expiration provisions. Upon expiration of the franchise agreements, Defendants must immediately cease use of ReBath's trademarks, logos, and service marks; turn over the manual; and provide ReBath with copies of all pending customer contracts. (*Id.* at 5-6.) The agreements also contain a noncompetition clause, which provides:

> for a period of one year thereafter, [Defendants may not] directly or indirectly, engage in or have any interest as an owner, partner, director, officer, employee, member, manager, consultant, representative, or in any other capacity, in or with any similar or competing business located within the Territory or 50 miles of the Territory.

(*Id.*) Last, the agreements prohibit Defendants from using or disclosing any confidential information for five years after expiration. (*Id.*)

In October 2014, ReBath learned from another franchisee that Defendants had transacted business outside their exclusive territory. (*Id.* at 5.) ReBath ultimately discovered that Defendants had undertaken fifteen remodeling jobs outside their exclusive territory and demanded payment of liquidated damages. (*Id.*) Defendants refused. (*Id.*)

Thereafter, two of the franchise agreements expired on November 28, 2015, and the other expired on May 3, 2016. (*Id.*) ReBath twice notified Defendants of their post-

expiration obligations, but Defendants continued to use ReBath logos and trademarks, failed to turn over the manual and customer contracts, and began operating a competing business at the same location under the name Bay State Kitchen & Bath.  (*Id.* at 7.) Defendants also continued to use websites bearing the ReBath name and trademarks, as well as customer testimonials that resulted from installing ReBath products.  (*Id.* at 8.)

On May 31, 2016, ReBath filed suit against Defendants alleging (1) trademark infringement, (2) false advertising, (3) breach of contract, and (4) trade secret misappropriation. (Doc. 1.)  ReBath also moved to preliminarily enjoin Defendants from (1) using its trademarks in its showroom and on its websites, (2) suggesting that Defendants are affiliated with ReBath, (3) engaging in unfair competition and trademark infringement, (4) engaging in false advertising, (5) operating a competing bathroom modeling business in violation of the noncompetition clause, and (6) maintaining, using or disclosing the manual.  (Doc. 4 at 1-2.)  ReBath also requests the Court order Defendants to return the manual and all confidential information in their possession, provide copies of pending customer contracts, and modify the websites to remove all references to ReBath.  (*Id.* at 2.)

## **LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009).  These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1134-35 (9th Cir. 2011).  However, the sliding-scale approach does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction.  *Id.* at 1135.  Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

1 injunction, so long as the plaintiff also shows that there is a likelihood of irreparable
2 injury and that the injunction is in the public interest." *Id.* at 1135. The movant bears the
3 burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184
4 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

## ANALYSIS

ReBath seeks to fully enforce the post-termination requirements of the franchise agreements. Defendants have certified to the Court that they have complied with several of these requests, including returning the manual, removing ReBath logos from service vehicles, removing signage from the showroom, ceasing use of the www.yrebath.com website, removing ReBath marks and logos from websites, removing testimonials from websites, and providing information regarding business leads and service calls. (Doc. 25 at 1-2.) Given Defendants' cooperation and their apparent concession that they are prohibited from using ReBath marks and logos in any fashion, the Court finds it unnecessary to analyze whether ReBath is likely to succeed on its trademark infringement and trade secret misappropriate claims. The only remaining issues are whether Defendants must comply with the covenant not to compete and whether Defendants may re-post certain testimonials on their website. Accordingly, the Court will address only whether ReBath is likely to succeed on the merits of its breach of contract and false advertising claims.

**I. Likelihood of Success on the Merits**

**A. Breach of Contract**

The central issue in this case is whether Defendants have breached the noncompetition provisions of the franchise agreements by continuing to operate their kitchen and bath remodeling business. The covenant prohibits Defendants from operating a competing bathroom remodel business within 50 miles of the franchise territory for one year. ReBath argues Defendants may operate the kitchen remodeling portion of their business, but not the bathroom remodeling aspect because it directly competes with ReBath's business. Defendants assert the covenant is unreasonably broad,

- 4 -

and therefore unenforceable.

"Arizona law does not look kindly upon restrictive covenants." *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1063 (D. Ariz. 2013). "[A] covenant not to compete is invalid unless it protects some legitimate interest beyond the employer's desire to protect itself from competition." *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1281 (Ariz. 1999). The restraint must not be "greater than necessary to protect the employer's legitimate interest[.]" *Id.* at 1283.[1]

Defendants argue the covenant does not protect any legitimate business interest because ReBath simply seeks to eliminate competition with current and future franchisees. This, however, does not appear to be the case. ReBath argues the covenant "is an important part of its franchise network" because it "protects ReBath's ability to retain customers by virtue of its goodwill and reputation, and it protects ReBath's ability to refranchise Defendants' former territory." (Doc. 5 at 12.) It also argues the covenant protects former franchisees from immediately utilizing and profiting off of ReBath's confidential information and trade secrets. In other words, if a former franchisee is able to immediately open a competing business and simply rename it, ReBath's business reputation and goodwill will suffer.

"Legitimate business interests include protecting confidential information, trade secrets, and business goodwill." *Or-Cal Inc. v. Tessendro Kerley Inc.*, No. CV-14-01980-PHX-DGC, 2015 WL 751212, at *2 (D. Ariz. Feb. 23, 2015) (citing *Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1221 (Ariz. Ct. App. 2002); *Farber*, 982 P.2d at 1281). Indeed, numerous courts have recognized a franchisor's legitimate business interest in protecting its goodwill through use of restrictive covenants. *See e.g.*, *Bad Ass Coffee Co. of Hawaii v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1246 (D. Utah 2009) ("there is

---

[1] The franchise agreements contain an Arizona choice of law provision, but provide that the restrictive covenants are to be "limited by, and the enforcement thereof is subject to, any prevailing law or statutes of the state(s) in which the Territory is located." (Doc. 26-2 at 47.) The parties agree that the laws of Arizona and Massachusetts regarding restrictive covenants are essentially the same. The Court will refer to both states' law and note discrepancies where necessary.

- 5 -

a strong connection between [the franchisor's] ability to stop a former franchisee from competing and [the franchisor's] goodwill); *O.V. Mktg. Assocs., Inc. v. Carter*, 766 F. Supp. 960, 966 (D. Kan. 1991) ("Courts have recognized certain interests attendant to a franchise that are protectable by restrictive covenants, such as good will . . . ."). Defendants do not dispute that they acquired the right to use ReBath's confidential information and openly operated as a ReBath franchise for several years, but then switched their business name to Bay State Kitchen & Bath. As the Court in *Bad Ass Coffee* noted, Defendants "overnight switch" to another business may signal to future ReBath customers that Defendants "lost faith in the [ReBath] brand." 636 F. Supp. 2d at 1246. It might also suggest that a franchisee can simply leave the ReBath franchise and "immediately start competing if they are unhappy with [ReBath]." *Id.* Accordingly, the Court finds the restrictive covenant likely is necessary to protect ReBath's legitimate business interests, including its confidential information, trade secrets, and goodwill.

Defendants argue the covenant is unreasonable in scope because it prohibits any competing activity within 50 miles of the territory.[2] They also assert the language of the covenant is overbroad because it prohibits competition with ReBath in any capacity. Defendants maintain that the covenant is overly broad and, if strictly construed, Bylo would not even be permitted to work at Home Depot.

In support of their argument, Defendants cite *Orca Communications Unlimited, LLC v. Noder*, 314 P.3d 89 (Ariz. Ct. App. 2013). In *Orca*, a public relations company brought suit against a former employee alleging violation of a non-compete covenant. *Id.* at 93. The covenant prohibited the employee from "directly or indirectly advertising, soliciting or providing Conflicting Services, which is defined as any product, service, or process that directly competes with one [the employee] worked on or acquired confidential information about during her employment[.]" *Id.* at 96. The court found the covenant overbroad because it was not limited to the employer's protected interest in

---

[2] The territory is defined as "The County of Suffolk" in Massachusetts. (Doc. 26-2 at 55.)

- 6 -

protecting confidential information.  *Id.*  Rather, "it prevent[ed] [the employee] from pursuing any type of work in the public relations industry, even work that would be based on her skill and talents and not merely on confidential information or customer relationships." *Id.*  Consequently, the court found the covenant unenforceable. *Id.*

*Orca* is distinguishable from the present case.  Unlike *Orca*, the covenant at issue here only prohibits Defendants from engaging in any activity related to bathroom remodeling.  Defendants are currently operating a kitchen and bathroom remodeling company.  ReBath, however, does not argue the kitchen component of Defendants' business is prohibited.  Nor does it assert that Defendants cannot do plumbing work, as long as it is not part of a typical bathroom remodel.  ReBath is in the business of selling, marketing and installing bathtub and shower base liners, as well as other bathroom remodel-related products and services, and the covenant only prohibits engaging in activity that competes with that business.  The Court finds that the language of the covenant is likely not overly broad.[3]

Defendants also challenge the covenant's geographic scope.  ReBath asserts the 50 mile radius is necessary to protect its goodwill and customer bases in the territory and surrounding area.  Numerous courts have upheld similar restrictions in the franchise context.  *See e.g.*, *Snelling and Snelling, Inc. v. Dupay Enter., Inc.*, 609 P.2d 1064-65 (Ariz. Ct. App. 1980) (upholding covenant prohibiting competition by former franchisee within 35 miles of the franchise territory for three years); *Economou v. Physicians Weight Loss Ctrs. of Am.*, 756 F. Supp. 1024, 1034 (N.D. Ohio 1991) (enforcing covenant not to compete within 50 mile radius of territory).  The Court finds the geographic scope of the covenant is likely reasonable.[4]

---

[3] In addition, *Orca* involved the enforceability of a covenant not to compete in the employer/employee context, in which an individual's ability to earn a living may be seriously impaired.  *See Gann v. Morris*, 596 P.2d 43, 44 (Ariz. Ct. App. 1979).  These types of covenants are subject to even greater scrutiny than those in the business to business context.  Here, Defendants appear to be sophisticated business owners.

[4] Defendants do not take issue with the covenant's temporal scope of one year.  In any regard, covenants not to compete for a year or longer are routinely upheld by courts. *See e.g.*, *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 128 (D. Mass. 2011); *Bad*

Accordingly, because the noncompetition clause is necessary to protect ReBath's legitimate business interests, is reasonable in temporal and geographic scope, and is not overly broad, the Court finds ReBath is likely to succeed on the merits of its breach of contract claim.

### B. False Advertising

ReBath argues Defendants' posting of customer testimonials on Bay State Kitchen & Bath's website constitutes false advertising. It asserts the work was performed using ReBath's products and methods, and therefore the Defendants are reaping the benefits of the goodwill established by ReBath. To establish a claim for false advertising under the Lanham Act, ReBath must show:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
>
> (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience;
>
> (3) the deception is material, in that it is likely to influence the purchasing decision;
>
> (4) the defendant caused its false statement to enter interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive AZ, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

Defendants argue the testimonials are truthful given that Defendants actually performed the work. Defendants relied on their experience in performing the work, and they should be able to reap the benefits. Defendants also argue that the nominative fair use doctrine protects their use of the testimonials and that they "do nothing to dilute the ReBath brand by identifying themselves as a former ReBath franchisee." (Doc. 26 at 10.)

Defendants do not dispute that they performed these jobs using ReBath's

---

*Ass Coffee*, 636 F. Supp. 2d at 1248 (enforcing two year covenant).

- 8 -

goodwill, proprietary materials, methods, and products. That Defendants actually performed the work is beside the point. The goodwill that Defendants acquired from performing work as a ReBath franchise belongs to ReBath, and Defendants' advertisement of that goodwill misleads consumers into believing Bay State Kitchen & Bath is wholly responsible for that customer satisfaction. Here, the false statement has nothing to do with Defendants' performance, but the implication that Bay State Kitchen & Bath is the entity who that earned the goodwill.

Relying on the nominative fair use doctrine, Defendants assert that they "can no more be prevented from advising consumers of their experience as a ReBath franchisee tha[n] Michael Jordan can be prevented from noting that he formerly played for the Chicago Bulls. (*Id.*) But this argument is off point. The nominative fair use doctrine protects fair use of trademarks, not goodwill. *See Playboy Enter., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). Here, the issue is not that Defendants are using the ReBath mark to describe some product or business, but that Defendants are capitalizing on the goodwill acquired from work performed as a ReBath franchise via the testimonials. Use of the testimonials evidences an intent by Defendants to trade off the goodwill acquired while operating as a ReBath franchise. The doctrine likely does not protect Defendants' use of the testimonials, and ReBath is likely to succeed on the merits of its false advertising claim.

## II.  Irreparable Harm

ReBath bears the burden of establishing that it likely will suffer irreparable harm in the absence of a preliminary injunction. *See Winter*, 555 U.S. at 21-23. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Defendants argue that ReBath cannot demonstrate irreparable harm because they have returned the manual and stopped using ReBath's marks and logos. This argument, however, fails to account for the irreparable harm to ReBath's goodwill caused by

Defendants' operation of a bathroom remodeling business in violation of the noncompetition covenant. Defendants operated their ReBath franchise out of the same building for nearly seven years. They service the same territory, and therefore at least partially benefit from the ReBath goodwill established over the years. As the Court has already noted, Defendants' "overnight switch" to New England Bath Inc. may signal to potential customers that Defendants have lost faith in the ReBath brand. *Bad Ass Coffee*, 636 F. Supp. 2d at 1246. This may cause ReBath to lose customers and make it difficult to establish another franchise in the territory. Indeed, "the majority of courts that have considered the question have concluded that franchising companies suffer irreparable harm when their former franchisees are allowed to ignore reasonable covenants not to compete." *Id.* at 1249. The Court finds ReBath has established that it will likely suffer irreparable harm in the absence of preliminary relief.

### III. Balance of Harms and Public Interest

The balance of harms tips in favor of ReBath. Defendants will not suffer irreparable harm should the Court issue an injunction. Defendants may continue to operate their kitchen remodeling and plumbing business, and after a year has passed, may again remodel bathrooms. Although Defendants point out that they may have to close their bathroom showroom and let go of several employees, it was Defendants' decision to open a competing business notwithstanding the noncompetition provision. Defendants cannot rely on self-inflicted harms in order to tip the balance in their favor. *See id.* at 1251. As such, the Court finds the balance of harms weighs in favor of ReBath.[5]

The public interest also weighs in favor of granting the injunction. It is generally in the public interest to enforce valid contracts and make "parties live up to their agreements." *See MarbleLife, Inc. v. Stone Resources, Inc.*, 759 F. Supp. 2d 552, 563 (E.D. Penn. 2010).

---

[5] Defendants argue that ReBath committed multiple breaches of the franchise agreements. (Doc. 26-1, ¶¶ 17-33.) But Defendants provide no evidence in support of their allegations. Instead, they refer only to complaints filed by them in another jurisdiction. Furthermore, even if true, the breaches would not excuse Defendants' performance of their post-termination obligations set forth in the franchise agreements.

- 10 -

## CONCLUSION

In sum, ReBath has established that it is likely to succeed on the merits of its breach of contract and false advertising claims, that it will suffer irreparable harm in the absence of preliminary injunctive relief, and that the balance of harms and public interest weigh in favor of granting such relief.

## MOTION TO FOR LEAVE TO FILE UNDER SEAL

ReBath filed a motion to file the manual under seal in connection with its reply brief. (Doc. 30.) The Local Rules, however, do not permit such practice, given that the opposing party is left without an opportunity to respond. As such, the motion is denied.

**IT IS ORDERED** that ReBath's motion for preliminary injunction, (Doc. 4), is **GRANTED**, and ReBath's motion for leave to file under seal, (Doc. 30), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants cease:

(1) using ReBath's trademarks, service marks, and logos, and any confusingly similar marks and logos, including without limitation, any use of the www.yrebath.com domain name;

(2) suggesting that Defendants are affiliated with, sponsored by, or endorsed by ReBath;

(3) operating a competing bathroom remodeling business within Defendant's former franchise territory or within 50 miles thereof until further notice of the Court, but lasting no longer than one year from the date of this Order; and

(4) maintaining, using or disclosing ReBath's Manual and Confidential Information and trade secret information.

Defendants are further ordered to:

(1) provide complete copies of all customer contracts and the status thereof to ReBath, and

(2) modify their websites to remove all proprietary materials provided by ReBath.

Dated this 15th day of July, 2016.

Douglas L. Rayes
United States District Judge